IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:16-CV-268-D

| | |
|---|---|
| CHARLENE J. BEST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND RECOMMENDATION** |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Charlene J. Best ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying her application for supplemental security income ("SSI") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 14, 16. Both filed memoranda in support of their respective motions. D.E. 15, 17. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 2 June 2017 Text Ord. For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

### I.  BACKGROUND

#### A.  Case History

Plaintiff filed an application for SSI on 9 April 2013, alleging a disability onset date of 1 January 2013. Transcript of Proceedings ("Tr.") 16. The application was denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 16. On 19 February 2015, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, represented by a

non-attorney representative, and a vocational expert ("VE") testified. Tr. 32-60. The ALJ issued a decision denying plaintiff's claim on 10 April 2015. Tr. 16-27.

Plaintiff timely requested review by the Appeals Council. Tr. 11. On 30 August 2016, the Appeals Council denied the request for review. Tr. 1. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. On 27 October 2016, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. § 1383(c)(3). *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations")[1] provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

---

[1] The versions of the Regulations cited herein are those in effect at the time of issuance of the ALJ's decision.

2

To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1). To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429. The Commissioner typically offers this evidence through the testimony of a [VE] responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### C. ALJ's Findings

Plaintiff was 49 years old on the date she filed her application (Tr. 26 ¶ 5) and 51 years old on the date of the hearing (Tr. 37). The ALJ found that she had a limited education (Tr. 26 ¶ 5) and past relevant work as a cook (Tr. 25 ¶ 5).

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since 9 April 2013, the application date. Tr. 18 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: subacromial impingement syndrome; diabetes; carpal tunnel syndrome; gastroesophageal reflux disease ("GERD"); hypertension; and obesity. Tr. 18 ¶ 2. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 19 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds the claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b), [2] with the following provisos: the claimant is limited to frequent pushing, pulling, operating hand controls, handling, fingering and/or feeling with the upper extremities, but she is limited to occasional overhead reaching with her right (dominant) upper extremity; she is limited to occasional climbing ramps and stairs, but no climbing ladders, ropes or scaffolds; she is limited to occasional balancing, but frequent stooping, kneeling, crouching and/or crawling; she must avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights.[]

Tr. 21-22 ¶ 4.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was able to perform her past relevant work as a cook (DOT #213.671-010), as generally performed.

---

[2] Under this regulation, "light work" is defined as "work involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 416.967.

4

Tr. 25-26 ¶ 5. The ALJ accordingly concluded that plaintiff had not been under a disability from the date she filed her SSI application, 9 April 2013. Tr. 27 ¶ 6.

The ALJ made the alternative finding at step five that there are other jobs in significant numbers in the national economy that plaintiff could perform, including jobs in the occupations of hand packer (DOT #920.682-166) and inspector (DOT #559.687-074). Tr. 27 ¶ 5. On this alternative basis, the ALJ also concluded that plaintiff had not been under a disability from the alleged onset of disability through the date of his decision. Tr. 27 ¶ 6.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id*.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v.*

*Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed, or in the alternative, the case should be remanded for a new hearing on the grounds that the ALJ erred in his reliance on the VE's testimony and his assessment of plaintiff's credibility. The court finds no error.

## IV. ALJ'S RELIANCE ON VE'S TESTIMONY

### A. Applicable Legal Principles

Social Security Ruling 00-4p requires that an ALJ inquire about and resolve in his decision conflicts between a VE's testimony and the DOT:

> Occupational evidence provided by a VE or VS [*i.e.*, vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the

> explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.
>
> . . . .
>
> ... The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

Soc. Sec. R. 00-4p, 2000 WL 1898704, at *2, 4 (4 Dec. 2000).

### B. Analysis

As noted, the VE testified that a hypothetical individual of plaintiff's age, education, work history, and RFC could perform her past relevant work as a cook (DOT #213.671-010) as generally performed, (Tr. 53-55) and could also perform jobs in the occupations of hand packer (DOT #920.682-166) and inspector (DOT #559.687-074) (Tr. 55-56). The ALJ adopted the VE's testimony in his determination that plaintiff could perform her past relevant work, as well as in his alternative determination that there were other jobs existing in significant numbers in the national economy that plaintiff could perform.

The parties agree that the DOT code numbers given by both the VE and ALJ regarding the occupations of cook and hand packer do not exist and that the VE's testimony for both occupations did not conform with the DOT. The ALJ therefore erred in adopting the VE's testimony regarding these two occupations. The Commissioner argues that any such error was harmless. The court agrees.

As discussed, the ALJ accepted the testimony of the VE that a hypothetical individual matching that of the plaintiff's age, education level, work experience, and RFC could perform the occupation of inspector, and the occupation of inspector is, in fact, listed in the DOT with the code number identified by the ALJ, 559.687-074. Moreover, the VE testified (Tr. 56) that, within this occupation, 1,800 jobs exist in North Carolina and 74,000 jobs exist in the national economy. The

ALJ adopted this testimony. Tr. 27 ¶ 5. Plaintiff does not contend that the ALJ's reliance on such testimony was in error.

The ALJ need only identify one occupation the plaintiff can perform as long as that occupation exists in significant numbers. *See Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254, 256 (3rd Cir. 2014) ("The ALJ satisfies her burden of production at [step five] when she identifies at least one occupation with a significant number of jobs in the national economy that the claimant can perform." (citing 20 C.F.R. §§ 404.1566(b), 416.966(b))); *Rios v. Colvin*, No. 1:13-cv-1458, 2015 WL 1258908, at *14-15 (E.D.V.A. 18 Mar. 2015) (explaining that the identification of "only one job is not by itself determinative" of a finding of non-disabled, but that the Commissioner also has the burden of proving that such jobs exist in significant numbers); 20 C.F.R. § 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (*in one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." (emphasis added)).

Here, the ALJ has identified an occupation that exists in the economy in significant numbers. *See Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (citing cases that found 174, 500, and 1,000 jobs each constituted a significant number (citations omitted)); *Hodges v. Apfel*, 203 F.3d 820 (4th Cir. 2000) (holding that 153 jobs available to plaintiff defeated his claim that a significant number of jobs did not exist in the economy).

Accordingly, the error regarding the ALJ's acceptance of the VE's erroneous testimony is harmless. Plaintiff's challenge to this aspect of the ALJ's decision therefore fails.

8

## V. ALJ'S CREDIBILITY ASSESSMENT

### A. Applicable Legal Principles

The ALJ's assessment of claimant's credibility involves a two-step process. First, the ALJ must determine whether the claimant's medically documented impairments could cause his alleged symptoms. *Craig*, 76 F.3d at 594-95. Next, the ALJ must evaluate the claimant's statements concerning those symptoms. *Id.* The ALJ's "'decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)).[3]

In assessing a claimant's credibility, the ALJ must consider "all of the available evidence." 20 C.F.R. § 416.929(c)(1). The evidence that should be considered includes: the claimant's history; signs and laboratory findings; statements from the claimant, the claimant's treating and nontreating sources about how the claimant's symptoms affect the claimant, including medical opinions; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; any measures the claimant uses or has used to relieve his pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* § 416.929(c)(1)-(3).

---

[3] Although Soc. Sec. Ruling 96-7p was rescinded by Soc. Sec. Ruling 16-3p, 2016 WL 1119029 (issued 16 Mar. 2016; effective 28 Mar. 2016 pursuant to 81 Fed. Reg. 15776 (24 Mar. 2016)), it postdates the ALJ's decision in this case, issued 10 April 2015.

9

"A party seeking benefits need not provide objective medical evidence to corroborate his allegations of pain." *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3727317, at *2 (E.D.N.C. 28 Aug. 2012); *see also Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017). "However, an ALJ may discredit a party's allegations of pain to the extent the allegations are inconsistent with (1) objective medical evidence of the underlying impairment or (2) the pain reasonably expected to be caused by the underlying impairment." *Id.* (citing *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006)); *Craig*, 76 F.3d at 595.

**B.   Analysis**

Plaintiff testified to the effect that the limitations imposed by her impairments are disabling. *See* Tr. 37-52. She claims specifically that she has trouble holding objects due to her carpal tunnel syndrome and that she lies down most of the day because she is in pain at night and cannot sleep. Tr. 38-44. The ALJ found plaintiff's allegations not entirely persuasive. Tr. 23 ¶ 4. Plaintiff contends that the ALJ erred in discrediting her testimony. The court finds no error.

The ALJ made the step one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 23 ¶ 4. But at step two, he found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely persuasive of disability for the reasons explained in this decision." Tr. 23 ¶ 4.

Two reasons given by the ALJ were the inconsistency of plaintiff's allegations of disability with her activities of daily living and with prior statements by her, including reports by her of her symptoms. Tr. 23 ¶ 4. The ALJ stated:

> Furthermore, despite the allegations of symptoms and limitations preventing all work, the record and the claimant's testimony reflects that, since the alleged onset date, she has lived alone and has engaged in the following activities of daily living: caring for herself without assistance, preparing simple meals (breakfast, e.g.) daily,

performing normal household chores once a week, walking, driving an automobile, shopping in stores, managing her finances, reading, watching television, attending church and socializing with friends and relatives (Exhibits 5E; 4F: 2; and 5F: 1). In addition, the record reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported.

The claimant testified that her carpal tunnel syndrome and shoulder problem began at about the same time, but the record shows the onset of her carpal tunnel symptoms in February 2013 (Exhibit 1F: 19), and the fall in which she injured her shoulder in August 2013 (Exhibit 8F: 2). At the hearing she denied experiencing any medical side effects, but she wrote in her Function Report that her Glimepiride and Lisinopril made her feel "weak, sleepy and dizzy" (Exhibit 5E: 8). Likewise, she wrote in her Function Report that she could lift no more than 2 pounds, but at the same time, she indicated she lifted clothe[s] baskets, dishes and cleaning supplies, which certainly would seem to weigh more than 2 pounds (Exhibit 5E: 6).

Tr. 23 ¶ 4.

The ALJ also ostensibly relies on the treatment records relating to the severe impairments he found plaintiff to have. Tr. 23-24 ¶ 4. Specifically, after reviewing them, he stated that "the entire case record . . . fails to convince the undersigned that [plaintiff] is so impaired that she cannot perform any kind of gainful work. Consequently, her subjective complaints cannot be found sufficiently persuasive to support a finding of disability." Tr. 24 ¶ 4.

Particular treatment records the ALJ discussed include the results of an EMG/NCV (*i.e.*, electromyogram and nerve conduction velocity) test on 23 September 2014 (*see* Tr. 339-42) that "were consistent with mild bilateral carpal tunnel syndrome." Tr. 24 ¶ 4. The ALJ also discussed the instruction to plaintiff by her primary care physician, Elie Osta, M.D., on 30 April 2014 to avoid lifting, carrying, pushing, or pulling more than five pounds with her right upper extremity (*see* Tr. 333), but noted that this was a temporary limitation and that "the record does not contain any medical evidence or opinions from the claimant's treating physicians that adequately support *permanent* limitations greater than those set forth in this decision." Tr. 24 ¶ 4.

Also supporting the ALJ's credibility assessment is his discussion of the consultative medical reports on plaintiff. For example, the ALJ noted that Maqsood Ahmed, M.D. performed two consultative examinations of plaintiff on 23 May 2013 (Tr. 297-304) and 15 August 2013 (Tr. 306-13), respectively. Tr. 24-25 ¶ 4. The ALJ determined that both examinations were generally within normal limits subject to certain exceptions, which, in the case of the second examination, were high blood pressure and decreased motion in her right shoulder and wrists. Tr. 24-25 ¶ 4. The ALJ continued:

> The doctor opined she could perform normal activities of daily living with some difficulty, but there were objective measures "suggesting functional limitations in (her) ability to lift or carry objects.["] Otherwise, she had no limitations in sitting, standing, or walking (Exhibit 4F). . . . . [L]ater neurological evidence suggests the claimant's carpal tunnel syndrome is milder than alleged, so frequent use of her upper extremities for the work-related activities noted in her residual functional activities is warranted.

Tr. 25 ¶ 4.

The ALJ also referenced the evaluation of the other medical consultant, nonexamining state agency physician Perry Caviness, M.D., who performed his evaluation on 11 October 2013 (Tr. 81-84) at the reconsideration level of review. Tr. 25 ¶ 4. As the ALJ noted, Dr. Caviness found plaintiff to be able to perform light work subject to fewer limitations than the ALJ included in his RFC determination. Tr. 25 ¶ 4. The ALJ found that with the exception of these additional limitations, Dr. Caviness's opinions are "generally consistent with the clinical record and accurately describe[] the functional impact of the medically determinable impairments upon the claimant." Tr. 25 ¶ 4. The ALJ gave them substantial weight. Tr. 25 ¶ 4.

Plaintiff contends that the ALJ provided legally insufficient reasons for his credibility assessment. But the factors the ALJ relied upon are proper considerations in assessment of a claimant's credibility. *See, e.g.*, 20 C.F.R. §§ 416.929 (c)(1) (plaintiff's statements); (c)(3)(i)

(daily activities); (c)(3)(iv) (side effects); (c)(4) (inconsistencies between plaintiff's statements and the evidence of record). Further, in this instance, the evidence relied upon constitutes substantial evidence supporting the ALJ's credibility assessment.

Plaintiff also contends that that the ALJ did not adequately identify the testimony by plaintiff he found to be not credible. The ALJ, though, did identify broadly the testimony he discredited, namely, "statements concerning the intensity, persistence and limiting effects of . . . [her] symptoms." Tr. 23 ¶ 4. As noted, he also identified specific statements by plaintiff at the hearing that he did not deem credible. *See* Tr. 23 ¶ 4. The court finds sufficient the ALJ's specification of the testimony by plaintiff he found not credible.

Plaintiff further argues that, while she can perform the activities of daily living discussed by the ALJ, the ALJ had a duty to inquire as to details concerning those activities, for example the weight of the dishes, clothes basket, and cleaning supplies the plaintiff uses. The court finds, however, that the ALJ's assumption that these items weighed over two pounds to be reasonable. *See* Tr. 23 ¶ 4. The ALJ also addressed a broad range of activities of daily living, comprising "caring for herself without assistance, preparing simple meals (breakfast, e.g.) daily, performing normal household chores once a week, walking, driving an automobile, shopping in stores, managing her finances, reading, watching television, attending church and socializing with friends and relatives." Tr. 23 ¶ 4. Furthermore, the ALJ has a duty to 'explore all relevant facts and inquire into the issues necessary for adequate development of the record,' *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), '[he] is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.' *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)." *Bell v. Chater*, 57 F.3d 1065 (table), 1995 WL 347142, at *4 (4th Cir. 1995)

(alterations in original). The record here was reasonably complete with respect to plaintiff's activities of daily living (and otherwise).

Lastly, plaintiff also argues that the ALJ did not properly tie plaintiff's activities of daily living to her ability to engage in work on a regular and continuing basis as required for full-time work. *See* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (2 July 1996) (discussing the capacity to work on a regular and continuing basis). While it is true that, standing alone, these activities do not necessarily show the capacity to work on a regular and continuing basis, they do shed at least some light on such capacity. Again, the Regulations expressly permit consideration of such activities in assessing a claimant's credibility. *See* 20 C.F.R. § 416.929(c)(3)(i). Moreover, the ALJ did not base his credibility assessment solely on plaintiff's activities of daily living, but also on significant additional evidence, as reviewed above. This final contention by plaintiff therefore fails.

The court concludes that the ALJ performed a proper assessment of plaintiff's credibility. It accordingly rejects plaintiff's challenge to the ALJ's credibility assessment.

## VI. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion (D.E. 16) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 14) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 4 December 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject,

or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Any response to objections shall be filed within 14 days after filing of the objections.

This 20th day of November 2017.

                                                          James E. Gates
                                                        United States Magistrate Judge